(Nos. 36743, 36930, Cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT MORRIS *et al.,* Plaintiffs in Error.

*Opinion filed March 18, 1964.*

Schaefer, J., concurring.

Stewart S. Dixon, of Chicago, appointed by the court, for plaintiff in error, Allen McDaniel.

Louis J. Prempas, of Chicago, appointed by the court, for plaintiff in error, Robert Morris.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Elmer C. Kissane and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

After a jury trial in the criminal court of Cook County, Robert Morris, Allen McDaniel, Raymond White and Albert Sledge were found guilty of the armed robbery of Augustus Cosey and were sentenced to the penitentiary for terms of 5 to 10 years. We have heretofore reviewed and reversed the conviction of Sledge on the ground that he was not proved guilty beyond a reasonable doubt, and we consider here consolidated writs of error prosecuted by Morris and McDaniel. It is the contention of these defendants that our reversal as to Sledge requires a reversal as to them; that the trial court erred in unduly limiting inquiry into the sobriety of the complaining and identifying witness; that they were denied certain rights inherent in constitutional guarantees of due process of law; and that

remarks of the trial judge made at the time of imposing sentence constituted reversible error.

The salient facts as shown by the record may be found in our prior opinion, (*People* v. *Sledge,* 25 Ill.2d 403,) and we see no necessary purpose for repeating them here. Suffice it to say we held there that discrepancies in the testimony of the complaining witness at the trial and at a preliminary hearing left a reasonable doubt as to whether Sledge was in fact a participant in the robbery. Such finding as to Sledge, however, does not require a similar finding as to Morris and McDaniel as is here contended, inasmuch as the discrepancies in the testimony as to that which was essential to convict Sledge did not extend to the proof necessary to convict these defendants. The record shows that Cosey consistently and positively identified them as two of the men who had robbed him when called upon to do so immediately after the robbery, at the preliminary hearing and at the trial. Thus, the doubt of guilt which arose as to Sledge did not arise as to the present defendants and, under the circumstances of the case, we cannot say that the discrepancies in the testimony of the complaining witness as it related to Sledge operated to render the former an unreliable witness against these defendants.

At the same time, however, we find ourselves in accord with the defendants that the trial court abused its discretion and committed error by unduly limiting inquiry aimed at the capacity of the complaining witness to identify his assailants. As noted in our prior opinion, Cosey and Sledge, utter strangers, joined together in the skid-row district of Chicago early in the morning hours and set out in Cosey's car either to find a night club or a prostitute. About an hour later the robbery occurred in an unlighted alley. The time consumed by the crime was short and the situation was confused by the scuffle between Sledge and the robber wielding the knife. Under all of the circumstances the op-

portunity and ability of the complaining witness to identify the robbers assumed the utmost importance. When cross-examined, Cosey stated that he had nothing to drink on the night in question but, thereafter, the trial court refused to allow an apparent effort by the defense to impeach such testimony and stifled all further attempts to inquire into the matter. Again, when Sledge appeared as a defense witness, the court sustained the State's objections to a series of questions going to the matter of Cosey's sobriety.

Where the principal issue concerns the identification of an accused, defense counsel should be given wide latitude on cross-examination in order that the intelligence of the witness, his powers of discernment and his capacity to form a correct judgment may be submitted to the jury so it may have an opportunity for determining the value of his testimony. And while cross-examination must always be held within reasonable and proper limits, we have consistently held that an accused has the right to question identifying witnesses concerning any matter which goes to explain, modify or discredit what they stated on direct examination. (*People* v. *Coli,* 2 Ill.2d 186; *People* v. *Pelletri,* 323 Ill. 176; cf. *People* v. *Andrews,* 327 Ill. 162, 171.) Here, it is our opinion that the defense should fairly and properly have been permitted to fully cross-examine Cosey on the matter of his sobriety and, by the same token, that Sledge should have been permitted to testify regarding the same issue. On this ground defendants should be accorded a new trial.

The conclusion we have reached makes it unnecessary to consider the claim of error predicated upon the remarks of the trial court, as well as the further contention (revolving around the discrepancies as to Sledge,) that the People obtained the convictions of these defendants by the knowing use of "perjured" testimony. However, since it may arise again, consideration must be given to defendants' contention that they were deprived of due process of

law because they were not provided with counsel at the preliminary hearing nor furnished with a transcript of such hearing.

To sustain their claim that due process requires counsel to be furnished for indigent persons upon the occasion of the preliminary hearing before an examining magistrate, defendants rely chiefly upon *Gideon* v. *Wainright,* 372 U.S. 335, 9 L. ed. 2d 799, decided March 18, 1963. An analysis of that opinion, however, reveals their reliance to be both factually and legally misplaced. In *Gideon* there was a request for counsel and a denial of such request which has no counterpart in the facts of this case. Moreover, the limits of that decision were that the Federal constitutional right to counsel is absolute in both capital and noncapital cases, and that the *refusal* of a State court to provide an indigent person with counsel on request is a denial of the due process clause of the fourteenth amendment. Despite defendants' urgings, we see nothing in the *Gideon* decision, nor in any other authority coming to our attention, holding or implying that such absolute right extends to representation at the preliminary hearing, or that the failure to provide counsel at such time amounts, *ipso facto,* to a denial of due process.

Under our constitution and statutes, now augmented by Rule 26 of this court, (Ill. Rev. Stat. 1963, chap. 110, par. 101.26,) it has been held that in felony cases the right to counsel attaches at the time of arraignment, the first step in a trial, before any pleas are made or received, (*People* v. *Kurant,* 331 Ill. 470,) and the record here discloses that defendants were provided with counsel at the time of arraignment. The real question in this case, as we see it, is the stage of a criminal proceeding at which the right to counsel exists and, in such regard, we are cognizant that such right is not confined to representation during the actual trial on the merits, but may extend to pretrial proceedings and occurrences. (See: *Crooker* v. *California,*

357. U.S. 433, 2 L. ed. 2d 1448; *Moore* v. *Michigan,* 355 U.S. 155, 2 L. ed. 167; *Gallegos* v. *Nebraska,* 342 U.S. 55, 96 L. ed. 86.) And, under the cited decisions, generally speaking, it is held that due process is violated by the lack of counsel before trial whenever the pretrial circumstances are such that the accused is so prejudiced thereby as to infect his subsequent trial with an absence of fundamental fairness essential to the very concept of justice. Under more recent decisions, however, it would appear that a failure to provide an indigent person with counsel violates due process, without regard to ensuing prejudice, whenever the pretrial proceeding, by whatever name it is called, constitutes a "critical stage" of the criminal process. Specifically, we refer to *White* v. *Maryland,* 373 U.S. 59, 10 L. ed. 2d 193, and *Hamilton* v. *Alabama,* 368 U.S. 52, 7 L. ed. 2d 114. In *White* the unrepresented defendant entered a plea of guilty at the preliminary hearing which was subsequently introduced in evidence against him at his trial, (*cf. People* v. *Jackson,* 23 Ill.2d 263;) while in *Hamilton* the accused had no counsel at arraignment, at which time, under Alabama procedure, certain defenses had to be raised or forever lost. Whether we measure by the old or new criterion, we find no denial of due process in this case.

A preliminary hearing in Illinois is not a "critical stage" where rights or defenses must be raised or lost, and neither is it a proceeding at which pleas are made or received. Rather, the scope and purpose of preliminary proceedings are in general to ascertain whether a crime charged has been committed and, if so, whether there is probable cause to believe that it was committed by the accused, (14 I.L.P., Criminal Law, sec. 171.) Even then a finding of probable cause is not binding upon a subsequent grand jury. These things being so, we see no basis for saying that the right to counsel arises upon preliminary hearing, or that fundamental fairness requires it. In like manner, there is no basis for saying that due process was denied under the

circumstances of this case. There is neither claim nor showing that the absence of counsel at the preliminary hearing prejudiced the defendants in any manner or fatally infected their subsequent trial, and neither is there a showing that a request for counsel was made at the preliminary hearing.

Nor does *Griffin* v. *Illinois,* 351 U.S. 12, 100 L. ed. 891, the single authority advanced, support defendants' claim that the State has a constitutional duty to provide indigent persons with a free transcript of the preliminary hearing. *Griffin* states only that destitute defendants must be afforded as adequate an appellate review as defendants who have the money to buy transcripts, and on such basis holds that it is a denial of due process and equal protection to refuse an indigent a free transcript of his *trial* for use on appeal. We find nothing in *Griffin,* or in the arguments presented here, which logically permits or requires its extension to transcripts of preliminary proceedings. Accordingly, such omission did not result in unfairness and affords no basis for reversal.

For the reason stated, the judgments of the criminal court of Cook County are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE SCHAEFER, concurring:

I concur in the result, but I do not agree with the observations concerning the right of an indigent defendant to a free transcript of the testimony at his preliminary hearing. At this time it is necessary to say only that in my opinion, when a court reporter was present at the preliminary hearing, as was true in this case, the holding in *Griffin* v. *Illinois,* 351 U.S. 12, requires that the defendant be furnished with a copy of the transcript upon request.